UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| EVOLUTIONARY INTELLIGENCE, LLC,<br><br>    Plaintiff,<br><br>  v.<br><br>MILLENIAL MEDIA, INC.,<br><br>    Defendant. | Case No.: 5:13-CV-04206-EJD<br><br>**ORDER GRANTING MOTION TO STAY PENDING <u>INTER PARTES</u> REVIEW**<br><br>**[Re: Docket No. 113]** |

Defendant Millenial Media, Inc. ("Millenial") brings this motion to stay pending <u>inter partes</u> review ("IPR") of U.S. Patent Nos. 7,010,536 ("the '536 Patent") and 7,702,682 ("the '682 patent") (collectively, the "asserted patents"). Dkt. No. 113. Plaintiff Evolutionary Intelligence, LLC ("Evolutionary") opposes the motion. Dkt. No. 115. Pursuant to Local Rule 7-1(b), the court found this matter suitable for resolution without oral argument and previously vacated the hearing. Having considered the parties' briefing and for the reasons set forth below, the court GRANTS the motion to stay.

**I.     Background**

    **a.  Procedural Background**

In October 2012, Evolutionary filed complaints in the Eastern District of Texas alleging infringement of the asserted patents against nine unrelated defendants:  Millenial Media, Inc.,

1

Case No.: 5:13-CV-04206-EJD
ORDER GRANTING MOTION TO STAY PENDING <u>INTER PARTES</u> REVIEW

Apple, Inc., Twitter, Inc., Facebook, Inc., Groupon, Inc., LivingSocial, Inc., FourSquare Labs, Inc., Yelp, Inc., and Sprint Nextel Corp.  In its complaint against Millenial, Evolutionary specifically alleges infringement of claims 1-16 of the '536 patent and claims 1, 3-7, 10, 11, and 14-22 of the '682 patent.  Dkt. No. 1.  Millenial filed its answer on December 17, 2012 and a few days later moved to transfer venue to this District under 35 U.S.C. § 1404(a).  Dkt. Nos. 9, 13.  The parties engaged in limited discovery relating to venue.  The Texas court ordered the case be transferred to this court on August 27, 2013.  Dkt. No. 88.  Between July and September 2013, the other eight actions were also transferred to this district.  On October 8, 2013, Evolutionary's motion to relate the nine actions was denied.  Dkt. No. 100.

On October 22 and 23, 2013, four defendants from the co-pending cases—Apple, Inc., Twitter, Inc., Yelp, Inc., and Facebook, Inc. (the "petitioners")—filed petitions for IPR at the United States Patent and Trademark Office ("PTO") seeking review of the asserted patents. Together, the IPR petitions seek review of all claims that Evolutionary asserts against Millenial. Millenial did not request an IPR for any claims of either asserted patent nor does it intend to.  Decl. of Nathan K. Cummings ¶ 2, Dkt. No. 117-1.  All defendants in the Evolutionary cases have requested a stay on the basis of these petitions for IPR and the other eight actions have been stayed pending resolution of the IPR proceedings.[1]  On April 25, 2014, after Millenial filed the instant motion, the PTO granted Apple's Petition 2014-00086 in part, taking claims 2-12, 14, and 16 of the '536 patent under review.  The PTO denied the remaining petitions, including all petitions directed to the '682 patent.

    **b.  IPR Background**

Pursuant to the Leahy-Smith America Invents Act ("AIA"), the IPR proceeding replaces the PTO's previous inter partes reexamination.  35 U.S.C. §§ 311-319.  Congress, in enacting the IPR

---

[1] Evolutionary Intelligence LLC v. Twitter, Inc., No. 13-CV-04207 (N.D. Cal. Feb. 25, 2014), Dkt. No. 111; Evolutionary Intelligence LLC v. Facebook, Inc., No. 13-CV-04202 (N.D. Cal. Jan. 23, 2014), Dkt. No. 148; Evolutionary Intelligence LLC v. Groupon, Inc., No. 13-CV-04204 (N.D. Cal. Jan. 23, 2014), Dkt. No. 104; Evolutionary Intelligence LLC v. LivingSocial, Inc., No. 13-CV-04205 (N.D. Cal. Jan. 17, 2014), Dkt. No. 96; Evolutionary Intelligence LLC v. Foursquare Labs, Inc., No. 13-CV-04203 (N.D. Cal. Jan. 10, 2014), Dkt. No. 99;; Evolutionary Intelligence LLC v. Yelp, Inc., No. 13-CV-03587 (N.D. Cal. Dec. 18, 2013), Dkt. No. 108; Evolutionary Intelligence LLC v. Sprint Nextel Corp., No. 13-CV-04513 (N.D. Cal. Feb. 28, 2014), Dkt. No. 123; Evolutionary Intelligence LLC v. Apple, Inc., No. 13-CV-04201 (N.D. Cal. Jan. 9, 2014); Dkt. No. 123 (partially stayed pending PTAB's decision to institute Apple's IPR petitions).

procedure, sought "to establish a more efficient and streamlined patent system that will improve patent quality and limit unnecessary and counterproductive litigation costs" and "to create a timely, cost-effective alternative to litigation." Changes to Implement Inter Partes Review Proceedings, Post-Grant Review Proceedings, and Transitional Program for Covered Business Method Patents, 77 Fed. Reg. 48680-01 (August 12, 2012) (codified at 37 C.F.R. §§ 42.100 et seq.).  Under the new procedure, any party other than the patent owner may request to cancel one or more claims of a patent; in doing so, the petitioner is limited to grounds that could be raised under 35 U.S.C. §§ 102 and/or 103 and only based on prior art consisting of patents and printed publications.  35 U.S.C. § 311(a)-(b).  If a party has been served with a patent infringement complaint, the party must file for IPR within one year of being served with the complaint.  35 U.S.C. § 315(b).

For the PTO to institute an IPR proceeding, the petitioner must show "that there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition," a higher burden than in the predecessor reexamination proceedings where the requester was only required to show a "substantial new question of patentability." 35 U.S.C. §§ 304, 314(a) .  Within three months of the filing of the petition, the patent owner may file a preliminary response setting forth arguments as to why the PTO should not institute IPR; alternatively the patent owner may waive the preliminary response to expedite the proceeding.  37 C.F.R. § 42.107(a)-(b).  The PTO must decide whether to institute the IPR within three months after the patent owner's preliminary response or by the last date on which the response could have been filed if the patent owner did not file a response.  35 U.S.C. § 314(b).

If the PTO institutes the IPR, the proceeding is conducted before three technically-trained Administrative Patent Judges of the Patent Trial and Appeal Board ("PTAB"). See 35 U.S.C. §§ 6(a)-(c), 311. This proceeding "converts inter partes reexamination from an examinational to an adjudicative proceeding." H.R. Rep. No. 112-98, 46 (2011), reprinted in 2011 U.S.C.C.A.N. 67, 77.  Where parties previously conducted amendment-and-response before a PTO examiner, the parties are now permitted to take limited discovery, respond to each other's arguments, and are entitled to an oral hearing before the PTAB. 35 U.S.C. § 316(a)(5), (8), (10), (13).

1   The PTO must issue its final IPR determination within one year, extendable for good cause for not more than six months. 35 U.S.C. § 316(a)(11). Final determinations are appealable to the Federal Circuit. 35 U.S.C. §§ 141(c), 319. To streamline later litigation and reduce the likelihood of inconsistent judgment, the petitioner is estopped from later asserting that a "claim is invalid on any ground that the petitioner raised or reasonably could have raised during that inter partes review." 35 U.S.C. § 315(e)(2).

## II. Legal Standard

Courts have inherent power to manage their dockets, including the discretion to decide whether to grant a stay pending a concurrent proceeding before the PTO. Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988). A stay is particularly justified where the outcome of a PTO proceeding is likely to assist the court in determining patent validity or eliminate the need to try infringement issues. In re Cygnus Telecomm. Tech., LLC, Patent Litig., 385 F. Supp. 2d 1022, 1023 (N.D. Cal. 2005) (citing Gould v. Control Laser Corp., 705 F.2d 1340, 1342 (Fed. Cir. 1983)). "While the case law states several general considerations that are helpful in determining whether to order a stay, ultimately the court must decide stay requests on a case-by-case basis." TPK Touch Solutions, Inc. v. Wintek Electro-Optics Corp., No. 13-CV-02218, 2013 WL 6021324, at *1 (N.D. Cal. Nov. 13, 2013).

Courts typically consider three factors to determine the appropriateness of a stay: "(1) whether discovery is complete and whether a trial date has been set; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party." Telemac Corp. v. Teledigital, Inc., 450 F. Supp. 2d 1107, 1111 (N.D. Cal. 2006) (citation omitted). The party seeking the stay bears the burden of persuading the court that a stay is appropriate. Nken v. Holder, 556 U.S. 418, 433-34 (2009).

## III. Discussion

### a. Stage and History of Litigation

The first factor requires the court to consider the stage and history of litigation, including whether discovery is complete or whether a trial date has been set. Telemac, 450 F. Supp. 2d at

4

1111. Here, Millenial contends this case is "in its very early stage" considering there is no case schedule; minimal discovery has been completed; Evolutionary's infringement contentions must be updated; Evolutionary has not requested to review Millenial's source code; no claim construction process has begun; there has been no expert discovery; and no trial date has been set. Def.'s Reply Br. at 1-2, Dkt. No. 117. Evolutionary counters that despite the fact that a trial date has not been set, Evolutionary has invested significant time in preparing its lengthy infringement contentions, producing 4,000 pages of documents, and serving several interrogatories on Millenial. Pl.'s Opp'n Br. at 25, Dkt. No. 115.

Considering the substantial amount of work that lies ahead of both parties, the court agrees with Millenial that the early stage in this case favors granting a stay. This district strongly favors granting a stay where there has been no material progress in litigation. ASCII Corp. v. STD Entm't USA, Inc., 844 F. Supp. 1378, 1381 (N.D. Cal. 1994); see also Pragmatus AV, LLC v. Facebook, Inc., No. 11-CV-02168, 2011 WL 48502958, at *2-3 (N.D. Cal. Oct. 21, 2011) (granting stay where no material progress in litigation was made despite plaintiff's serving infringement contentions, interrogatories, requests for admission, and document requests). This policy underlying reexamination proceedings has extended with the same force to IPR proceedings. See, e.g., Pi-Net Int'l, Inc. v. Focus Bus. Bank, No. 12-CV-04958, 2013 WL 4475940, at *3 (N.D. Cal. Aug. 16, 2013) (granting stay where a trial date was scheduled but significant discovery remained); see also Internet Patents Corp. v. eBags, Inc., No. 12-CV-03385, 2013 WL 4609533, at *2 (N.D. Cal. Aug. 28, 2013) (granting stay where no trial date had been set and no dispositive motions or claim construction briefs had been filed). Notably, the courts in each of the co-pending Evolutionary cases have similarly held that the early stage of litigation weighs in favor of a stay.

Here, Evolutionary has engaged in limited discovery relating to venue, served infringement contentions, and served common interrogatories to Millenial as well as all defendants in the co-pending cases. The court recognizes that Evolutionary may have spent some time and resources at this stage, but the bulk of the time and expenses lie ahead. Further, Evolutionary does not present any additional evidence to indicate why this case against Millenial is more advanced than the other Evolutionary cases, all of which recognized that discovery is far from complete. Millenial seeks a

5

1  stay at this early stage of litigation and before any substantive proceedings have occurred.
2  Accordingly, the first factor weighs in favor of stay.

### b. Simplification of Issues and Trial

The second factor considers whether granting a stay will simplify the litigation. Telemac, 450 F. Supp. 2d at 1111. Evolutionary argues that because patents often survive PTO proceedings with at least some patent claims in their original form, there is no evidence that the IPR proceeding will eliminate the need for litigation or simplify the issues in this case. Pl.'s Opp'n at 10-11, Dkt. No. 115. Millenial counters that the simplification of the issues in an IPR proceeding does not require that the IPR resolve all or most of the issues, merely that some issues for litigation are simplified. Def.'s Reply at 10, Dkt. No. 117.

The court agrees with Millenial that a stay is not contingent upon IPR resolving every issue in this action. Instead, the court considers whether the IPR proceedings will streamline the litigation. Internet Patents Corp., 2013 WL 4609533, at *3 ("[a] stay is not contingent upon the reexamination proceeding resolving every claim and issue in this action."); see also Ho Keung Tse v. Apple, Inc., No. 06-CV-06573, 2007 WL 2904279, at *8 (N.D. Cal. Oct. 4, 2007) ("[I]f the reexamination proceeding should narrow any of the asserted claims. . . the scope of this litigation may be significantly simplified."); see also AT&T Intellectual Prop. I v. Tivo, Inc., 774 F. Supp. 2d 1049, 1053 (N.D. Cal. 2011) (rejecting the argument that a stay is inappropriate where the reexamination is unlikely to resolve all the claims at issue). Here, the PTO has granted IPR as to the majority of the '536 patent claims asserted against Millenial. If the PTO modifies or cancels some or all of the claims subject to review, both the court and parties benefit because the scope of this case may be narrowed and further proceedings will be streamlined. See 35 U.S.C. § 317.

Even if the IPR proceeding does not result in any cancelled or modified claims, this court will receive the benefit of the PTO's expertise and guidance on these claims. See In re Cygnus, 385 F. Supp. 2d at 1024 ("For those claims that survive the reexamination, this court may have a richer prosecution history upon which to base necessary claim construction determinations or reconsiderations"). This expectation is particularly relevant at this juncture, where the court has not yet invested significant resources into familiarizing itself with the technology. See Internet Patents

Corp., 2013 WL 4609533, at *3 (stating that the court is unfamiliar with the technology at this early stage of litigation so the court's "interest in simplifying the proceedings by waiting for the PTO to re-examine the asserted claims weighs in favor of granting a stay"). Further, by employing the specialized expertise of the PTO, the court and the parties avoid duplicative costs and efforts. See Microsoft Corp. v. Tivo Inc., No. 10-CV-00240, 2011 WL 1748428, at *4 (N.D. Cal. May 6, 2011) (noting that there is significant concern with wasting resources by proceeding forward when the court and PTO reach inconsistent conclusions). Evolutionary simply does not proffer any persuasive argument why staying this proceeding pending resolution of the IPR proceedings will not foster efficiency or simplify issues for trial.

Evolutionary does, however, present a compelling argument as to the inefficiency of a stay absent an estoppel requirement. Typically, the benefit of a stay pending IPR is contingent in part upon the IPR proceeding's estoppel effect, i.e., the prohibition that the petitioner is precluded from relitigating the same issues that were raised or reasonably could have been raised during the IPR proceeding. The posture of the parties in this case calls that benefit into question. The plain language of Section 315(e)(2) imposes a full statutory estoppel on IPR petitioners; however, because Millenial is not a party to the relevant IPR proceeding, Millenial is not necessarily bound by this statutory provision. Considering the position of the parties, the strategic options available to patent infringement defendants, and the relief Millenial requests through this motion, as well as to fully appreciate the benefits of a more streamlined litigation, the court will condition a stay on Millenial's agreement to be bound as if it itself had filed the relevant IPR petition. With this estoppel in place, the court finds that the second factor weighs in favor of a stay.

### c. Prejudicial and Tactical Concerns

The third factor looks to whether a stay will unduly prejudice or present a clear tactical disadvantage to the non-moving party. See In re Cygnus, 385 F. Supp. 2d at 1023. Evolutionary makes two arguments as to why it will suffer undue prejudice as a result of the stay: (1) Millenial's motion to stay is a dilatory tactic and (2) a stay would cause the spoliation of critical evidence. The court is not persuaded that either of these alleged harms constitutes undue prejudice.

Evolutionary argues Millenial unduly delayed in filing this motion because the petitioners to the IPR proceedings waited an entire year after being served with a complaint to file IPR petitions and Millenial, which did not join as a petitioner, waited an additional three months to file the instant motion to stay. Pl.'s Opp'n at 9, Dkt. No. 115. The petitioners' delay in filing for IPR could potentially suggest that they were acting in a strategically dilatory fashion, however, IPR petitioners are permitted one year after receiving a patent infringement complaint to file an IPR petition with the PTO. Many courts have recognized that undue prejudice does not automatically flow from a party's choosing to exercise its statutory rights. See Software Rights Archive LLC v. Facebook, Inc., No. 12-CV-03970, 2013 WL 5225522, at *6 (N.D. Cal. Sept. 17, 2013) ("Although defendants did wait nearly a year to file the IPR petitions, they properly filed the petitions within the statutory time frame, and the delay was not unreasonable."); see also Convergence Tech. (USA), LLC v. Microloops Corp., No. 5:10-CV-02051, 2012 WL 1232187, at *3 (N.D. Cal. Apr. 12, 2012) ("parties having protection under the patent statutory framework may not complain of the rights afforded to others by that same statutory framework"); but cf. Universal Elecs., Inc. v. Universal Remote Control, Inc., No. 12-CV-00329, 2013 WL 1876459, at *2 (C.D. Cal. May 2, 2013) (denying stay where the defendant filed for petition nearly a year later because written discovery had been exchanged, a Markman hearing had been held, a claim construction order had been entered, and a trial date had been set). Here, petitioners did not act in a dilatory fashion by waiting until significant discovery commenced before filing their IPR petitions. Instead, the petitioners properly filed IPR petitions in accordance within the statutorily mandated deadline before the infringement actions made any significant progress.

As to Millenial's actions, Millenial filed the instant motion within five months after Evolutionary first served its infringement contentions, a reasonable time period recognized by many courts. See Ho Keung Tse, 2007 WL 2904279, at *4 (finding no dilatory motive where defendants filed the request for reexamination three months after serving their invalidity contentions); see also Semiconductor Energy Lab Co., Ltd. v. Chimei Innolux Corp., No-12-CV-00021, 2012 WL 7170593, at *3 (C.D. Cal. Dec. 19, 2012) (filing IPR petitions ten months after complaint and three to four months after receiving the infringement contentions was not an

8
Case No.: 5:13-CV-04206-EJD
ORDER GRANTING MOTION TO STAY PENDING INTER PARTES REVIEW

unreasonable delay); see also Fresenius Medical Care Holdings, Inc. v. Baxter Int'l, Inc., No. 03-CV-01431, 2007 WL 1655625, at *4 (N.D. Cal. June 7, 2007) (noting that parties may not abuse the reexamination process by applying for reexamination after significant discovery has commenced). Although Millenial filed this motion fifteen months after the initial complaint was filed, it is reasonable that Millenial concentrated its efforts thus far in its motion to transfer this action and discovery related to venue. Additionally, discovery is in its early stage and Millenial has not yet provided its invalidity contentions or its source code. Accordingly, Evolutionary fails to offer any evidence that demonstrates Millenial's timing of this motion was intended to disadvantage Evolutionary.

Evolutionary's second contention, that a stay is prejudicial because it would result in the loss of critical evidence, amounts to nothing more than speculation. According to Evolutionary, the accused product in this case is comprised of source code that is modified on a daily basis. Pl.'s Opp'n at 17-18, Dkt. No. 115. Evolutionary opines that as time passes, the source code will be altered and the software developers responsible for the source code may leave the company or their memories will fade. Id. Millenial disagrees and argues that Evolutionary offers no evidence to demonstrate that the relevant documents and source code would be unavailable. Def.'s Reply at 11, Dkt. No. 117. Speculation that evidence will be lost, without more, is insufficient to demonstrate undue prejudice. See, e.g., Software Rights Archive, 2013 WL 5225522, at *5 ("[Plaintiff] has not identified a particular expert witness who is likely to be lost, nor is the court convinced that the relevant technology or evidence thereof would become "unavailable" for the purposes of a patent infringement analysis."); Internet Patents Corp., 2013 WL 4609533, at *4 (noting that the potential for loss of evidence, such as witness memory, applies to any case where IPR is sought and alone does not demonstrate undue prejudice). Moreover, Evolutionary has made the same arguments in parallel cases, and all were similarly rejected. See, e.g., Evolutionary Intelligence LLC v. Apple, Inc., No. 13-CV-04201, 2014 WL 93954, at *3 (N.D. Cal. Jan. 9, 2014); Evolutionary Intelligence LLC v. Sprint Nextel Corp., No. 13-CV-04513, 2014 WL 819277, at *7 (N.D. Cal. Feb. 28, 2014). This court is not persuaded that a stay will result in the spoliation of critical evidence. Thus, the third factor weighs in favor of stay.

## IV. Conclusion

For the foregoing reasons, the court CONDITIONALLY GRANTS Millenial's Motion to Stay, contingent upon Millenial's agreement to be bound by the same estoppel that limits IPR petitioners as set forth by 35 U.S.C. § 315(e). This action is STAYED in its entirety pending final exhaustion of the relevant review proceedings, including any appeals.[2]

Millenial shall file, on or before June 20, 2014, a notice indicating its consent or declination to be bound by this estoppel limitation. The notice shall not exceed one page in length. Millenial is cautioned that, absent full consent, the court may sua sponte reconsider this Order.

The parties shall submit a joint status report apprising the court of the status of the relevant review proceedings on December 8, 2014 and every six months thereafter.

The parties shall provide notice to the court within one week of final exhaustion of all relevant review proceedings, including appeals. In their notice, the parties shall request that this matter be reopened, and that a case management conference be scheduled.

The clerk shall ADMINISTRATIVELY CLOSE this file.

**IT IS SO ORDERED**

Dated: June 11, 2014

_____
EDWARD J. DAVILA
United States District Judge

---

[2] This order does not preclude any party from moving to reopen this action, when appropriate.